IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KELVIN WALKER, | ) |
| PLAINTIFF, | ) CIVIL ACTION NO. _____ |
| vs. | ) |
| | ) HON. |
| THE DOW CHEMICAL COMPANY, | ) |
| DEFENDANT. | ) |

## COMPLAINT

PLAINTIFF, KELVIN WALKER, by and through his attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint and Demand for Trial by Jury against THE DOW CHEMICAL COMPANY.

## JURY DEMAND

COMES NOW PLAINTFF, and hereby makes his demand for trial by jury.

## JURISDICTION

1. At all times relevant to this complaint, PLAINTIFF KELVIN WALKER was a resident of Saginaw, County in the State of Michigan.

2. DEFENDANT THE DOW CHEMICAL COMPANY is a domestic profit corporation, which has a place of business in Midland, Michigan.

3. This action is brought in this Court on the basis of federal question jurisdiction, pursuant to 42 U.S.C. § 1981.

4. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

1

## VENUE

5. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

6. Plaintiff, Kelvin Walker, is a Black male who began working for Dow Chemical Company in or around 2017.

7. Throughout his employment, Plaintiff witnessed and experienced racial discrimination, a hostile work environment, and retaliation at the hands of Dow and its supervisors.

8. Plaintiff personally witnessed the mistreatment of a Black female co-worker, Sushma Jones, who was subjected to racist comments, harassment, and unfair treatment. Specifically, Ms. Jones had her personal property stolen, was transferred to a less desirable building, and Plaintiff was told by people at Dow that she was let go.

9. Ms. Jones was referred to as "Harriet Tubman" by a white employee, and despite the racist and inappropriate nature of the comment, no disciplinary action was taken against the employee who made it.

10. After Ms. Jones was transferred, Dow conducted a widespread write-up of employees for their involvement in various workplace incidents, disproportionately targeting Black employees.

11. Dow provided an 800-number hotline for reporting concerns about workplace misconduct. Plaintiff, fearful of retaliation, called the hotline anonymously from a friend's house to report the ongoing mistreatment of Black employees.

12. Upon information and belief, and despite his efforts to prevent the company from knowing it was him, Dow knew that Plaintiff had called the hotline.

13. Not long after his report, Plaintiff was accused of manipulating his work time records, specifically for not marking medical time correctly. However, Plaintiff had a documented medical condition and had followed the same procedure for medical leave throughout his employment without issue.

14. Plaintiff observed that white employees regularly left work early and manipulated their time records without consequence. Despite this, only Black employees were disciplined for timekeeping infractions.

15. In or around June or July 2023, Plaintiff received his first disciplinary write-up related to timekeeping.

16. On July 27, 2023, Plaintiff was terminated under the pretext of time manipulation, despite having no prior disciplinary history related to his timekeeping.

17. Throughout his employment, Plaintiff was subjected to racially discriminatory comments, such as a co-worker, Dave, using the N-word in Plaintiff's presence without facing any consequences.

18. Plaintiff was regularly followed around the workplace by supervisors as if he were suspected of theft, while white employees were not subjected to similar treatment.

19. Plaintiff was repeatedly questioned about his use of vacation time, unlike his white co-workers, who were not similarly scrutinized.

20. Black employees at Dow Chemical Company were treated disparately, receiving harsher discipline for similar or lesser infractions compared to white employees.

21. Just prior to Plaintiff's termination, several white co-workers who had previously ignored him suddenly began speaking to him and acting friendly, suggesting that they were aware of his impending termination.

22. Plaintiff was informed of his termination via voicemail while he was off work.

23. After terminating Plaintiff, Dow attempted to block his unemployment benefits.

24. Plaintiff has suffered damages as stated herein.

## **COUNT I – RACIAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**

25. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

26. 42 U.S.C. § 1981 prohibits employers from intentionally discriminating against individuals, including employees, in the making and enforcement of contracts.

27. Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded to him by the U.S. Constitution and the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

28. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are not Black, including the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

29. The intentional discrimination on the basis of Plaintiff's race by Defendant includes harassment and Defendant's refusal to promote Plaintiff or treat him like other non-Black employees, which ultimately led to Plaintiff's termination.

30. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of, and with reckless indifference to the rights and sensibilities of Plaintiff.

31. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

32. As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about his future, and emotional distress.

## **COUNT II – RETALIATION IN VIOLATION OF THE ELCRA**

33. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

34. At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

35. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

36. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to retaliate against an employee who has engaged in protected activity.

37. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including speaking up about racial discrimination and harassment.

38. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to agents of Defendant.

39. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, including terminating him.

40. Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard of Plaintiff's rights.

5

41. Plaintiff notified Defendant and its agents of the unwelcome conduct and communication; however, Defendant failed to remedy the same.

42. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

43. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

### COUNT III – RACE DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT (ELCRA)

44. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

45. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

46. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color.

47. Plaintiff is a Black man and, as a result, is a member of a protected class pursuant to ELCRA.

48. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class, as stated herein.

49. Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's rights.

50. The unwelcomed conduct and communication was intended to, and in fact did, substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

51. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, emotional distress, humiliation, and embarrassment, and loss of professional reputation.

52. Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT IV – HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ELCRA**

53. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

54. At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

55. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

56. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

57. Plaintiff's work environment, as alleged in the statement of facts, made it so that any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

58. Moreover, Plaintiff's attempts to have the situation remedied, coupled with Defendant ignoring complaints about discrimination, made the situation untenable.

59. Additionally, Defendant treated Black employees such as Plaintiff in a hostile, intimidating, and offensive way.

60. The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile, or

7

offensive work environment, as alleged in the statement of facts.

61. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

62. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

### COUNT V – WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

63. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

64. Defendant's termination of Plaintiff violated the public policy of Michigan, which prohibits discharging employees in retaliation for reporting illegal discrimination or for exercising legal rights.

65. As a direct and proximate result of Defendant's wrongful discharge, Plaintiff has suffered damages, including lost wages, emotional distress, and other damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kelvin Walker respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, The Dow Chemical Company, and award the following relief:

1. Compensatory damages, including lost wages, benefits, and emotional distress;
2. Exemplary and punitive damages;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees;
5. Any other relief this Court deems just and proper.

Dated:  October 16, 2024                    Respectfully Submitted,

                                                  CARLA D. AIKENS, P.L.C.

                                                  <u>/s/ Carla D. Aikens</u>
                                                  Carla D. Aikens (P69530)
                                                  Rejanaé M. Thurman (P85701)
                                                  615 Griswold St., Ste. 709
                                                  Detroit, MI 48226
                                                  carla@aikenslawfirm.com
                                                  rejanae@aikenslawfirm.com
                                                  *Attorneys for Plaintiff*